1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

10

UNITED STATES OF AMERICA,           )      2:09-cr-00395-ECR-PAL
                                     )      2:10-cv-01761-ECR
                                     )
11
                                     )
12                    Plaintiff,     )
                                     )
13        vs.                        )      ORDER
                                     )
14   RAFAEL ROJO-MAYA,               )
                                     )
15                    Defendant.     )
                                     )
16   ─────────────────────────────── )

17        On March 31, 2011, Defendant Rojo-Maya filed an Amended Motion

18   (#47) to Vacate, Set Aside or Correct Sentence by a person in federal custody.

19   The Government filed an opposition (#49) to the motion on April 20, 2011.

20        The amended motion is based upon Defendant's claim that his counsel was

21   ineffective at sentencing for failure to raise "cultural assimilation" as a basis for

22   departure.

23        In considering Defendant's motion, we first review the question of whether

24   there is any reasonable likelihood that had Defendant's attorney contended for a

25   departure based on cultural assimilation it would have resulted in a departure.

26        At the time Defendant was sentenced, March 17, 2010, the 2009 United

27   States Sentencing Guidelines ("U.S.S.G.") were in effect.  It does not appear that

28   at that time there was any specific Guideline permitting departure on the basis of

1  cultural assimilation on an unlawful reentry charge.  However, at the of

2  Defendant's sentencing, cultural assimilation was well recognized as a basis for

3  departure or variance by Ninth Circuit jurisprudence.

4      The Ninth Circuit case of United States v. Rivas-Gonzalez, 384 F.3d 1034

5  (9th Cir. 2004), held cultural assimilation to be the basis for departure must occur

6  after defendant has legally entered this country.  Cultural assimilation as a basis

7  for departure may not be asserted if it occurs after an illegal entry.  The Pre-

8  Sentence Report indicates that Defendant moved from Mexico to Las Vegas,

9  Nevada, in 1996 to seek employment opportunities.  He was then 19 years of age.

10  The record does not disclose if that entry was legal or illegal, but the fact that

11  Defendant subsequently obtained a permanent residence card in 1999 is possible

12  evidence that his original entry might have been lawful.  Defendant was

13  subsequently deported to Mexico on March 18, 2003, after a conviction in the

14  Southern District of California for importation of marijuana.  While cultural

15  assimilation during the period of 1996 - 2003 could have been after a lawful

16  entry, cultural assimilation claimed for any time after 2003 cannot be counted.

17  There is therefore a period of 7 years when cultural assimilation could have

18  occurred when Defendant was between ages 19 and 26.  Incidentally, we note

19  that children who are brought across the border unlawfully by their parents are

20  usually exempted from the rule of no cultural assimilation unless there has been a

21  lawful entry.  Defendant would not qualify for that exemption however because

22  he came to the United States at age 19 on his own to seek employment.

23      Some of the other tests for cultural assimilation which were used at the

24  time of Defendant's sentencing were:

25      (1)  *Extraordinary circumstances*.  Such do not appear to exist in this

26          case.

27      (2)  *Defendant was a de facto American citizen and is being punished by*

28          *being banished from "his" country*.  Defendant, all in all, does not

1  meet the test.

2  (3)  *Defendant's entry was due to familial and custodial ties, rather than*

3  *economic.*  Defendant had a wife and child residing in the United

4  States at the time of his illegal reentry in 2005 and may benefit from

5  this test.

6  (4)  *Defendant had unusual cultural or family or community ties to the*

7  *United States.*  There is no evidence to indicate any such ties

8  existed.

9  (5)  *Defendant had children in United States schools.*  In this case, with

10  a child born approximately in the year 2001, Defendant may have

11  had a child in school at the time he was sentenced.

12  (6)  *Defendant speaks English.*  An interpreter was sworn and translated

13  the sentencing proceedings from English to Spanish for the

14  Defendant.  It appears Defendant does not speak or adequately

15  understand English to any reasonable degree.

16  (7)  *Defendant has a history of employment in the United States.*  There

17  is no evidence one way or the other in the record with respect to this

18  test.

19  (8)  *Defendant's community activities.*  There is no evidence of any

20  community activities by Defendant in this country.

21  (9)  *Defendant's substantial recent criminal violations.*  Cultural

22  assimilation even with the underworld may be considered cultural

23  assimilation if it is general criminal activity of American-style as

24  opposed to Mexican-style.

25  Arrests may be taken into consideration as negative factors in the

26  mix in determining whether defendant is culturally assimilated.

27  Here, Defendant does have several reasonably recent criminal

28  convictions, including in 2002 importation of marijuana, in 2005

1    disturbing the peace involving batteries on his wife, in 2007

2    coercion also involving batteries on his wife, and in 2007 D.U.I.

3    Defendant was, at the time of his sentencing here, pending

4    sentencing in Nevada State Court for trafficking in a controlled

5    substance, cocaine.  He had previously entered a plea of guilty.

6        Defendant also suffered an arrest for domestic battery in 2000,

7    with prosecution denied.

8    (10)    *Defendant was educated in the United States.*  All of Defendant's

9            formal education through the 12th grade occurred in Mexico.

10   (11)    There is no evidence to support a claim of cultural assimilation on

11           the basis of Defendant's interest in the performing arts, American

12           culture or friendship with Americans.

13   (12)    Defendant's age of 19 at his first entry suggests he was not

14           culturally assimilated at the time he was sentenced but rather that his

15           cultural assimilation was with his native Mexico.

16       Taking all of the above factors into consideration, it is unlikely that

17   evidence of cultural assimilation would have affected Defendant's sentence.

18       Although it appears it was adopted after Defendant was sentenced,

19   Application Note 8 to U.S.S.G. 2L1.2 is helpful in testing whether Defendant

20   would have had any reasonable case for cultural assimilation that would have

21   likely affected his sentence.  The Application Note 8 largely tracks the

22   preexisting case law as of the time Defendant was sentenced.

23       Under this Application Note, such a departure should be considered only

24   in cases where:

25   (A)    The defendant formed cultural ties primarily with the United States

26          from having resided continuously in the United States since

27          childhood.  Defendant cannot meet this test.

28   (B)    Those cultural ties provided the primary motivation for the

4

1    defendant's illegal reentry or continued presence in the United

2    States.  There is no evidence that Defendant originally entered this

3    country because of cultural ties; he came to seek employment.

4    There is some evidence he may have reentered in 2005 and remained

5    here because of his wife and child.  However, familial ties

6    themselves are not sufficient to meet the test of cultural assimilation.

7            We conclude that Defendant could not have met this "only" test.

8    The U.S.S.G. 2L1.2 Application Note 8 includes additional considerations:

9    (1)    *The age in childhood at which defendant began residing*

10            *continuously in the United States.*  Defendant came to this country at

11            age 19, as an adult, after childhood.

12    (2)    *Whether and for how long defendant attended school in the United*

13            *States.*  Defendant completed school in Mexico before he entered

14            this country.  He never attended school in the United States.

15    (3)    *The duration of defendant's continued residence in the United*

16            *States.*  We count 1996 -2003 and 2005 -2010.  This is 12 years.

17    (4)    *The duration of defendant's presence outside the United States.*

18            Defendant resided in Mexico for 21 years.

19    (5)    *The nature and extent of defendant's familial and cultural ties*

20            *outside the United States.*  Defendant's parents reside in Mexico; his

21            father owns a restaurant there and his mother is a homemaker.

22            Defendant has three adult siblings, all of whom reside in Mexico.

23            Defendant had a good childhood in Mexico; all of his necessities

24            were met there.  The Pre-Sentence Report states that Defendant told

25            the probation officer that his wife and family were, at the time of

26            sentencing, awaiting his release to return to Mexico where the

27            family will reside once he was deported.

28    (6)    *The seriousness of defendant's criminal history.*  As set forth above,

1    Defendant has a serious criminal history.  He was a Criminal History

2    Category III under the Sentencing Guidelines (U.S.S.G.) at the time

3    of sentencing.

4        (7)    *Whether defendant engaged in additional criminal activity after*

5    *reentering the United States.*  Defendant had misdemeanor

6    convictions both involving domestic battery after 2005 when he

7    returned to the United States.  These occurred in 2005 and 2007.  He

8    also had a D.U.I. conviction in 2007, and a trafficking in controlled

9    substance plea of guilty awaiting sentencing in 2009.  Defendant did

10   engage in additional criminal activity after returning to the United

11   States unlawfully in 2005.

12       Defendant substantially fails each of these seven considerations contained

13   in the present Guidelines.

14       It is clear that cultural assimilation could not have been reasonably argued

15   as a basis for departure at Defendant's sentencing hearing.  Raising the issue

16   could have resulted in calling to the Court's attention many negative things

17   concerning Defendant's status and conduct.  Such could have detracted from

18   counsel's other arguments presented at sentencing.

19       Failing to present a claim of cultural assimilation could not be considered

20   to constitute ineffective assistance of counsel.

21   /        /        /

22   /        /        /

23   /        /        /

24   /        /        /

25   /        /        /

26   /        /        /

27   /        /        /

28   /        /        /

1        IT IS THEREFORE ORDERED that Defendant's Amended Motion (# 47)

2  pursuant to 28 U.S.C. § 2255 is <u>DENIED</u>.

3        The Court finds that an appeal from this order would be meritless.  We

4  therefore, deny a certificate of appealability.

5        The Clerk shall enter judgment accordingly.

6

7        Dated this 23rd day of September 2011.

8

9                                        _____

10                                EDWARD C. REED, JR.
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7